UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CELIA PALOMARES DE GONZALEZ; | § | |
| aka CELIA DE SANTIAGO | § | |
| PALOMARES, *et al*, | § | |
| | § | |
| Movants, | § | |
| VS. | § | CRIMINAL ACTION NO. 2:13-CR-718 |
| | § | |
| GUILLERMO FLORES CORDERO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This is an ancillary proceeding in which Petitioners Celia Palomares de Gonzalez, a.k.a. Celia de Santiago Palomares, Alvaro Elias Garcia Gonzales, and Celia Isabel Garcia Gonzalez, as next friend of Celia Palomares de Gonzalez assert an interest in the property sought to be forfeited, approximately 3.8 million dollars on deposit at the Inter National Bank of McAllen, Texas, in a certificate of deposit for account number 57561 in the name of Celia Palomares de Gonzalez aka Celia de Santiago Palomares (D.E. 118). FED. R. CR. P. 32.2(c)(1).

Pending are the following motions:  (1) The United States of America's (the Government's) motion to dismiss Petitioners' motion for third-party ancillary proceeding and to deny requests regarding next friend status (D.E. 122); (2) Petitioners' motion to set aside or amend the preliminary order of forfeiture (D.E. 145, 146[1]); (3) the Government's

---

[1] These two entries appear to be exact duplicates, except that the later entry (D.E. 146) contains appropriate electronic signatures of counsel missing in the earlier entry (D.E. 145).

motion for medical examination of Petitioner Celia Palomares de Gonzalez[2] (Celia) (D.E. 152) and (4) the Government's motion to appoint an attorney ad litem or guardian ad litem for Celia (D.E. 153).  For the reasons stated below, it is respectfully recommended that (1) The motion to dismiss be denied; (2) Petitioners' motion to set aside or amend the preliminary order of forfeiture be denied;  (3) The Government's motion to deny "next friend" status be denied without prejudice; (4) The Government's motion for examination of Celia be conditionally granted; (5) The Government's motion to appoint a guardian ad litem for Celia be denied; and (6) the Government's motion to appoint an attorney ad litem for Celia be denied without prejudice.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

On May 9, 2014, Celia, Alvaro Elias Garcia Gonzalez (Alvaro), and Celia Isabel Garcia Gonzalez (Isabel) as next friend of Celia (collectively Petitioners), filed a third-party ancillary proceeding and a motion to amend a preliminary order of forfeiture (D.E. 118).  The preliminary order of forfeiture was entered on December 9, 2013 as part of a criminal prosecution involving defendants Guillermo Flores Cordero (Flores) and Leticia Maria De Guadalupe Galan Villalobos (Galan)[3] (D.E. 56).  Petitioners were not defendants in the criminal matter.

---

[2] Celia is sometimes referred to as Celia de Santiago Palomares.
[3] Galan is occasionally referred to in the pleadings as "Leticia Maria De Guadal Villalobos" which appears to be a truncated version of her name.

In the order, the Court stated that based on Flores's guilty plea and Galan's withdrawal of claim and consent to forfeiture, it found that the Government had established the requisite nexus between the bank account and the offense of conviction, which was conspiracy to launder monetary instruments (Prelim. Ord. of Forfeiture, D.E. 56). The bank account was identified as all funds on deposit in certificate of deposit (CD) account number 57561 held in Celia's name at the Inter National Bank of McAllen, Texas in the amount of $3,866,221.95 (Subject Monies).

In their original petition for third-party ancillary proceeding, Petitioners assert that they and the criminal defendants do not know one another and have no personal or business relationship. Petitioners further maintain that they are sole owners of the legal interest in the Subject Monies, which they acquired in the course of a multi-million dollar real estate transaction.

Petitioners contend that Celia and Alvaro, who are grandmother and grandson, own three large contiguous tracts of real property in Mexico which is worth many millions of dollars. They acquired two of the tracts in 1973 and one in 2003. In March 2007 they sold a sixty percent interest in the real property to a group of investors which was represented by an agent, Rene Castillo de la Cruz (Castillo), who also was an investor. The property was to be developed into a large-scale housing development. Petitioners did not know the identities of any of the other investors. Proceeds from the sale of the property, paid to Petitioners over the course of several years, make up the funds in the CD which is the subject of the forfeiture.

In June 2008, Castillo told Alvaro that another man, Oscar Gomez (Gomez), was going to take over making payments under the contract. Castillo represented that he had explained to Gomez the details of the real estate transaction and was confident that Gomez would carry out the duties under the contract. In addition, Castillo told Alvaro that Gomez was the brother-in-law of the then governor of Tamaulipas. Gomez began to make the payments on the real property.

Beginning in September 2008, two entities, Comercializadora de Tubos y Conexiones SA de CV (Tubos) and Costeiras SA de CV (Costeiras), began to make the payments on the real property. Alvaro asked Gomez about the change and Gomez told him that the companies were legitimate and fiscally sound. The payments from the two companies continued until January 2011.

In August 2013 Flores and Galan were indicted on the money laundering charges. The indictments came to Alvaro's attention when Gomez told Alvaro that Flores had been arrested and that he was involved with Tubos and Costeiras, which had been submitting payments on the real property.

In September or October 2013,[4] Gomez presented Alvaro with what appeared to be a sales contract for the same real property described above between Celia as seller and Tubos and Costeiras as buyer. Alvaro states that the document was signed by Celia, even though she was not present when Gomez gave him the document. It is unclear when, or under what circumstances, Celia signed the document. Alvaro took the document home

---

[4] It is unclear what payments, if any, were made on the real property between January 2011 and September 2013, or if any payments were made after Defendants were indicted.

to examine it and noted that it was backdated to 2008, that the only two buyers listed were the two entities which had most recently been making payments and that the number of hectares described was nearly double that of the original contract.  Alvaro called Gomez to discuss what he considered errors and a month later, Gomez told Alvaro that the errors had been corrected.

However, by that time Alvaro had learned that Flores and Galan had been arrested and Alvaro became uneasy with the arrangement.  Alvaro also became suspicious of Gomez's efforts to get the erroneous second contract signed.  The second sales contract was never executed.[5]

The first several payments for the real property were given to Alvaro and subsequent payments were made to Celia.  Celia's payments were transferred to CD 42697 and subsequently to CD 57561, which was seized by the Government.  Both CD's were held in Celia's name.

## A.  Petitioners' Contentions

Petitioners assert the following in their original petition for ancillary proceeding: (1) Defendants Flores and Galan lacked any interest in the Subject Monies, or, alternatively, Petitioners are bona fide purchases for value of the Subject Monies; (2) The indictment is insufficient because it does not describe the Subject Monies as being

---

[5] Alvaro also notes that the second contract contained a 15 percent penalty in the event of non-payment, although the parties had not agreed upon an amount for a penalty.  As an alternate ground for recovery, he asserts that Petitioners are entitled to the forfeited money because it is equal to a fifteen percent penalty due them because the buyers stopped paying under the contract.

subject to forfeiture; (3) The Government has failed to show that the Subject Monies were involved in or traceable to the money-laundering offenses; (4) In the alternative, a constructive trust over the Subject Monies exists, or should be imposed by the Court with Petitioners as beneficiaries and such trust serves as a vested or superior interest under 18 U.S.C.A. § 853(n)(6)(A); and (5) Factual determinations made during the criminal proceedings are not binding on Petitioners and due process requires that Petitioners be allowed to rebut any presumption of forfeitability.

In addition, Petitioners seek the right to conduct discovery and seek confirmation of Isabel as next friend of Celia. Petitioners also seek attorney's fees in connection with this proceeding.

Petitioners also filed a motion to set aside or amend the preliminary order of forfeiture (D.E. 145, 146) in which they argue the following: (1) The Court has the power to set aside the preliminary order of criminal forfeiture; (2) The Government has presented no evidence of nexus between the Subject Monies and the criminal offense; and (3) The criminal indictment is fatally defective in regard to the forfeiture because it did not state that the forfeiture was to be part of the sentence.

**B. Government's Motion to Dismiss and Response to Motion to Set Aside**

In its motion to dismiss, the Government asserts that the Subject Monies represent part of the proceeds from the money-laundering scheme perpetrated by Flores and Galan. The Government argues that Alvaro has neither statutory nor Article III standing to assert an interest in the Subject Monies because (1) he has no legal interest in the property; (2) he was not a bona fide purchaser for value; and (3) he was not a general creditor. The

Government further asserts that the evidence is insufficient to justify the need for a next friend to act on behalf of Celia.

In its response to Petitioners' motion to set aside the preliminary order of forfeiture, the Government argues that third parties such as Petitioners cannot challenge the forfeitability of the Subject Monies but are limited to filing an ancillary proceeding pursuant to 21 U.S.C. § 853(n). The Government further argues that the plea proceedings in the Defendants' cases were sufficient to establish a nexus between the Subject Monies and the criminal offenses.

## APPLICABLE LAW

### A. Asserting a Third-Party Interest

Pursuant to the criminal forfeiture statute, 21 U.S.C. § 853, a third party asserting an interest in forfeited property may petition for a hearing to adjudicate its interest in the property. 21 U.S.C. § 853(n)(2). The statute further provides the following:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

> The court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6).

Third parties are not always entitled to a hearing.  "[T]he court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason.  For purposes of the motion, the facts set forth in the petition are assumed to be true."  Fed. R. Crim. P 32.2(c)(1)(A).  A motion to dismiss a third-party petition prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b).  *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2nd Cir. 2004).

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests the formal sufficiency of the statement of a claim for relief.  It is not a procedure for resolving disputes about the facts or the merits of a case.  In ruling on a motion to dismiss, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court described the specificity a complaint must have to survive a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . .

*Twombly*, 550 U.S at 555(internal citations and quotations omitted).

In *Ashcroft v. Iqbal*, 556 U.S.662 (2009), the Supreme Court held the following:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], 550 U.S. at 570, 127 S.Ct. at 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S.Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S.Ct. 1955.

*Iqbal*, 556 U.S. at 678.  Accordingly, in order to survive the Government's motion to dismiss, Petitioners must allege enough facts to show that a plausible claim for relief exists on the face of the pleading.

**(1) Standing**

The Government asserts that Alvaro does not have standing to pursue a third-party claim.  Standing in forfeiture cases has both constitutional and statutory aspects. *United States v. Timley*, 507 F.3d 1125, 1129 (2007).  Regarding constitutional standing, a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture. *Id.* (citing *United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003)).

In order to establish statutory standing, a third party asserting a legal interest in property subject to forfeiture must file a petition setting forth the "the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the

petitioner's acquisition of the right title or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought."   21 U.S.C. § 853(n)(3).   There are only two categories under which a third party can make out a claim that he is entitled to preliminarily forfeited property.   He can show that he had legal right, title or interest in the property superior to that of the defendant at the time the interest of the United States vested through the defendant's commission of an act giving rise to forfeiture, or he can show that he is a bona fide purchaser for value of the right, title, or interest in the property who had no knowledge of the forfeitability of the property.   *United States v. White*, 306 Fed. Appx. 838, 840 (5th Cir. 2007); 21 U.S.C. § 853(n)(6).

### (a) Superior Legal Interest

The Government argues that because Alvaro is not a named account holder on the account from which the Subject Monies were seized, he cannot show that he has a legal interest in the property.[6]   The Court looks to state law to determine whether, for purposes of 21 U.S.C. § 853(n)(6)(A), a petitioner has legal right, title or interest in property, and then looks to federal law to determine whether the property is subject to forfeiture. *United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008); *United States v. Nava*, 404 F.3d 1119, 1127 (9th Cir. 2005); *United States v. Brewer*, 591 F.Supp.2d 864, 868 (N.D. Tex. 2008).   *But see United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000)(Court rejected analyzing property interest by looking at state law in favor of "dominion and control" test).

---

[6] The Government does not contest Celia's standing to bring a claim.

Texas courts recognize that a bank account may have a nominal owner as well as a true owner.  "When a creditor wants to challenge title to funds held by a third party, the creditor should seek a writ of garnishment naming the nominal owner not the true owner. The court is then responsible for determining true ownership." *Bank One, Texas, N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992).  *See also RepublicBank Dallas v. National Bank of Daingerfield*, 705 S.W.2d 310, 311 (Tex. App. –Texarkana 1986, no writ)(Under Texas garnishment law, equitable title to property sought to be reached prevails over bare legal title to the property);  *Frasier v. M.I. Management, Inc.*, No. 14-99-01277-CV, 2001 WL 1136173 (Tex. App.—Houston [14th Dist.] 2001, no pet.)(not designated for publication)(application for writ of garnishment denied where equitable owner of bank account showed that nominal owners of funds held no more than bare legal title).

Alvaro asserts that he was the owner of one of the parcels of land sold to the group of investors and that he placed the proceeds he received from the sale of his portion into Celia's account.  He said he did so out of a moral obligation to her because she is his grandmother, because she sold a much greater number of hectares than he did and also because he knows that Celia's estate plan bequeaths to him the entirety of her interest in the real property.  Because he knows he will inherit Celia's interest in the property, he wanted to make sure she would enjoy the initial payments to the greatest extent possible while she is alive.

Alvaro further asserts that his interest in the Subject Monies was at all times superior to that of defendants Flores and Galan because they never had any ownership

interest in the Subject Monies.  Neither Flores nor Galan ever paid Alvaro any money. Rather, he received payments on the real property from Cruz and Gomez, who were not named as defendants in the action and later, from Tubos and Costeiros.  In addition, Alvaro asserts that neither Flores nor Galan could have had an interest in the Subject Monies because Petitioners and Cruz executed the contract for sale of the real property in March 2007 and Petitioners began to receive payments at that time, while the Government stated at a hearing in this matter that Gomez did not begin to receive funds from Tuobos and Costeiras until February 2009 (*See discussion*, D.E. 147 at 25-30).

In addition, Alvaro also claims that he spent some of the Subject Monies to buy an interest in a boat in his own name and also as collateral on a loan to fund his own business, indicating that the Subject Monies belonged to him and were not deposited in the CD as part of the money-laundering scheme perpetrated by Flores or Galan. Accepting Alvaro's factual allegations as true, he has made out a claim that he has legal right, title or interest to at least a portion of the Subject Monies at issue.

**(b)  Bona Fide Purchaser for Value**

Alvaro argues in the alternative that he has standing because he is a bona fide purchaser for value in that he gave a sixty percent interest in the real property to the joint venture in exchange for the Subject Monies that were ultimately transferred to the forfeited CD.  He claims that he entered into the transaction without any knowledge of the alleged money-laundering scheme.

The concept of "bona fide purchaser for value" reflects the common-law rule that an innocent purchaser for value must be protected.  *United States v. Lavin*, 942 F.3d 177,

186 (3rd Cir. 1991)(internal quotation omitted).  The concept has developed over time to promote finality in commercial transactions by protecting the title of a purchaser who acquires property for valuable consideration and is without notice that the seller lacks valid and transferable title in the property.  *Id.*

The Government asserts that the bona fide purchaser for value exception is restricted to tangible assets and does not extend to intangible deposit accounts, citing in support *United States v. Watson*, 2010 WL 2573478 *4 (W.D. Mich. 2010).  However, the Sixth Circuit reversed the district court's finding in *United States v. Huntington National Bank*, 682 F.3d 429, 435 (6th Cir. 2012), noting that the distinction between interests in tangible property versus intangible property is not supported by the statutory language or by precedent.  The court explained that the definition of "property" in the forfeiture statute expressly includes real property, as well as tangible and intangible property interests.  *Id.* (citing 21 U.S.C. § 853(b)).  The statute precludes forfeiture when a transferee establishes that he is a bona fide purchaser for value of such property.  *Id.* (citing § 853(c)).  Thus, under the plain meaning of the statute, protections offered to bona fide purchasers for value apply to interests in both tangible and intangible property. *Id.*  The Government did not cite to any other authority for its argument that the bona fide purchaser for value exception does not apply to deposit accounts and none was found.

The Government further contends that Alvaro cannot be a bona fide purchaser for value because he cannot show that he lacked knowledge that the Subject Monies were subject to forfeiture.  Once again, federal courts look to state law to determine whether a claimant was a bona fide purchaser for value.  *Pacheco*, 393 F.3d at 353; *United States v.*

*Frickholm*, 362 F.3d 413, 416 (7th Cir. 2004); *United States v. Harris*, 246 F.3d 566, 571 (6th Cir. 2001).  In Texas, to receive the protection offered to a bona fide purchaser for value, one must acquire the property in good faith, for value and without notice of any third-party claim or interest.  *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). Notice may be constructive or actual.  *Id.*  Actual notice rests on personal information or knowledge, while constructive notice is notice the law imputes to a person not having personal information or knowledge.  *Id.*

Petitioners allege that starting in early 2005, Alvaro was approached by numerous potential buyers wanting to purchase and develop the real property.  He engaged in negotiations with two entities that expressed an interest in buying the real property, but ultimately rejected offers by them in favor of Castillo's offer.  Castillo offered to purchase a sixty percent interest in the property for five dollars per square meter with a substantial down payment and Alvaro found the offer attractive because Alvaro and Celia would retain a forty percent interest in the property.  Alvaro wanted to retain an interest because he anticipated that the property would continue to increase in value and also because he wanted to be involved in the development of the property.  In addition, after the lengthy negotiations and inquiries about Castillo's other developments, Alvaro was impressed with Castillo's experience and reputation.  Alvaro asserts that he knew nothing of the money-laundering scheme until September 2013 when he heard that Flores and Galan had been indicted and that even then he did not know there was a possible connection between the Defendants and the payments he received toward the real

property.   At all times he believed he was selling the real property to a group of legitimate investors.

The Government asserts that it is "completely unrealistic and objectively unreasonable" to accept as true Alvaro's allegations that he had no knowledge that the payments received were involved in a money-laundering scheme.   However, taking a claimant's assertions as true is exactly what the Court must do at this point in the litigation.  Fed. R. Crim. P. 32.2(c)(1)(A).  Alvaro has made out a colorable claim that he engaged in an arms-length negotiation with Castillo for the sale of the property and that he knew nothing about the money-laundering scheme.   Accordingly, it is recommended that the Government's motion to dismiss for lack of standing be denied.

### (2) Constructive Trust

In the alternative, Alvaro asks the Court to find that a constructive exists, or, to impose a constructive trust over the Subject Monies with Petitioners as beneficiaries. Because it is recommended that Alvaro be found to have standing on other grounds, an analysis of the constructive trust argument is not offered.   Should the District Court request an analysis of this issue, a Supplemental Memorandum and Recommendation will be filed.

## B.  Motion to Set Aside or Amend Preliminary Order of Forfeiture

Petitioners argue that they are entitled to bring a separate action to set aside or amend the preliminary order of forfeiture.   The crux of Petitioners' argument is that during the defendants' criminal proceeding, no evidence was presented to show a nexus between the criminal offense and the Subject Monies.   They contend that without such

evidence, the Government cannot be said to have met its burden of showing that the funds in Celia's CD were subject to forfeiture.  Petitioners further contend that the indictment in the criminal case was faulty and cannot support the forfeiture of the Subject Monies.  They ask the Court to set aside the preliminary order of forfeiture or to amend it to omit or exclude the Subject Monies from forfeiture.

It is clear from relevant authority that Petitioners may not bring a separate action but must litigate their rights to the forfeited property via the third-party ancillary proceeding.  The Fifth Circuit has stated the following:

> The criminal forfeiture statute bars a third party claiming an interest in forfeitable property from intervening in the criminal trial or appeal, and also prohibits a third party from commencing a separate action against the United States on the basis of that party's interest in the property.  21 U.S.C. § 853(k), (n).  Under the statute, the only way in which a third party may assert an interest in the forfeited property is through an ancillary proceeding.  *See id.; Libretti v. United States*, 516 U.S. 29, 44, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995)("Once the Government has secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to return of the assets only by means of the hearing afforded under 21 U.S.C. § 853(n).")

*United States v. Holy Land Foundation for Relief and Development*, 722 F.3d 677, 684 (5th Cir. 2013).

Nevertheless, as part of the third-party ancillary action, Petitioners can present their arguments regarding nexus and the Court can amend the preliminary order of forfeiture if Petitioners establish by a preponderance of evidence that they have superior legal title to the Subject Monies.  21 U.S.C. § 853(n); *United States v. Andrews*, 530 F.3d 1232, 1236 (10th Cir. 2008).  While neither Defendants' convictions nor the forfeiture as it relates to them can be relitigated, the issue of the nexus between the criminal acts and

the Subject Monies, as it relates to Defendants' interest in Subject Monies, will necessarily be addressed by the Court. *See United States v. Lazarenko*, 504 F.Supp.2d 791, 795 (N.D. Cal. 2007)("It was Congress' clear intention in passing Section 853(n) that third parties be awarded relief if they were to show a cognizable interest in the property preliminarily ordered forfeited, including interests vindicated by challenging the validity of the underlying forfeiture itself."). *See also United States v. Bailey*, 926 F.Supp.2d 739, 764 (W.D. N.C. 2013)(preliminary order of forfeiture is an interlocutory order and is subject to revision prior to entry of final judgment in the case).

It is recommended that Petitioners' Motion to Set Aside or Amend Preliminary Order of Forfeiture (D.E. 145, 146) be denied.[7]  Petitioners will be able present evidence on their claim that Defendants never owned an interest in the Subject Monies via their § 853(n) petition.

### C.  Next Friend

Rule 17(c) of the Federal Rules of Civil Procedure provides that an incompetent person may be represented in a lawsuit by a general guardian, a committee, a conservator or a like fiduciary.  Fed. R. Civ. P. 17(c)(1).  An incompetent person who does not have a

---

[7] Some confusion may arise because the original ancillary petition also contains a motion to set aside the preliminary order of forfeiture (D.E. 118).  The petition is properly filed and signed under penalty of perjury as required by 21 U.S.C. § 853(n)(3), and requests that the preliminary order of forfeiture be set aside because Petitioners have legal right, title, and interest in the property, and/or are bona fide purchasers for value.  21 U.S.C. § 853(n)(6)(A)&(B).  On the other hand, the motions to set aside the forfeiture and amend the preliminary order of forfeiture (D.E. 145, 146) are signed only by counsel and challenge the Court's entry of the preliminary forfeiture order on other grounds.  This section addresses only the motions filed by counsel (D.E. 145, 146) and does not address or adjudicate the ultimate question of the Petitioners' rights to the property, a decision to be made by the District Court following a hearing.

duly appointed representative may sue by a next friend or a guardian ad litem.[8]  Fed. R. Civ. P. 17(c)(2).

A "next friend" does not become a party to the action, but simply pursues the cause on behalf of the person he represents, who remains the real party in interest. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990).  "Next friend" standing is not granted automatically to whomever seeks to pursue an action on behalf of another.  *Id.*  A "next friend" must provide an adequate explanation of why the real party in interest cannot appear on her own behalf to prosecute the action.  *Id.*  In addition, the "next friend" must be truly dedicated to the best interests of the person on whose behalf she seeks to litigate. *Id.*  It is within the district court's discretion to determine a real party in interest's need for representation and who may best fill that need.  *Adelman on Behalf of Adelman v. Graves*, 747 F.2d 986, 989 (5th Cir. 1984).  The burden is on the next friend to establish the propriety of the status and thereby justify the jurisdiction of the court.  *Whitmore*, 495 U.S. at 163.

It its motion to dismiss, the Government argued that Petitioners merely made conclusory allegations regarding Celia's need for a next friend and asked the Court to deny the request to confirm Isabel as next friend.  The Government has also asked the Court to allow an independent medical examination of Celia and for the Court to appoint an attorney ad litem or guardian ad litem for her (D.E. 152, 153).

---

[8] "Technically, an incompetent plaintiff sues by a 'next friend,' while an incompetent defendant defends by a 'guardian ad litem,' but the duties and powers of the representative are identical regardless of which title is applied.  *Adelman on Behalf of Adelman v. Graves*, 747 F.2d 986, 988 n. 4 (5th Cir. 1984)(citing *Dacanay v. Mendoza*, 573 F.2d 1075, 1076 n. 1 (9th Cir. 1978)).

**(1) Suitability of Celia as "Next Friend."**

In its motion for appointment of attorney ad litem or guardian ad litem for Celia, the Government argues that Celia and Isabel have conflicting interests that render Isabel unsuitable to serve as "next friend." Isabel filed an affidavit in which she states that she is Celia's granddaughter and Alvaro's sister. She manages most of Celia's finances and makes medical and financial decisions for her (Isabel Aff., Ex. B. to Resp. to Mot. to Dism., D.E. 144-2). In 2004 Celia was added as a signer to Celia's account number 217565 at Inter National Bank in McAllen, Texas (*Id.*; Addendum to Signature Card and Account Agreement, D.E. 18-1 at 42-45). Isabel sees Celia almost daily to ensure that her needs are met. She consults with Celia's home healthcare providers and oversees their work. (Isabel Aff., Ex. B. to Resp. to Mot. to Dism., D.E. 144-2).

Isabel is familiar with the instant lawsuit and has spoken to the attorney handling the suit. Isabel has time and energy to pursue the lawsuit on her Celia's behalf. Isabel has no personal interest in the subject matter of the suit (*Id.*)

The Government argues that Isabel's interests conflict with Celia's interests in that Isabel is a co-signer on Celia's personal account and the personal account was the conduit for money movements between the two CD's at issue in this case (D.E. 153 at 2-3). The Government further avers that Isabel has received direct financial benefit from the CD at issue during a time when Celia is alleged to have been incompetent. The Government submitted an affidavit from a Drug Enforcement Administration special agent who states that Isabel and her husband have received thousands of dollars in checks written by Celia or Isabel with no explanation for what the cash was spent on and that since June 2013,

Celia has signed more than $3,500 in checks to Isabel during the time period it is alleged that Celia was incompetent (Aff. of Special Agent Jennifer Sanchez, D.E. 153-1).

The fact that Isabel was appointed as a co-signer on Celia's account in 2004 and writes checks on the account, absent some other evidence of wrongdoing, does not lead to a conclusion that Isabel's interests conflict with those of Celia. As an owner or signer on the account, it is presumed that Isabel has authority to write checks on the account as she sees fit. Nor does the fact that Celia wrote checks to Isabel during the time Petitioners allege she was incompetent call into question Isabel's suitability as "next friend," although it may raise issues regarding Celia's competency.

In any event, even if Isabel were taking financial advantage of Celia, her interests are still aligned with Celia's insofar as neither of them has any reason to agree that the Government was entitled to seize the money in the CD. *Compare Adelman*, 747 F.2d at 988 ("next friend" status of temporary guardian challenged after guardian had ward involuntarily committed to mental institution and banned mother from visiting); *Chrissy F. by Medley v. Mississippi Dept. of Public Welfare*, 883 F.2d 25, 27 (5th Cir. 1989) ("next friend" status of father representing minor child challenged after he sexually abused her).

Nothing in the record indicates that Isabel is not qualified to serve as Celia's "next friend." Thus, it is recommended that Isabel be found dedicated to Celia's best interests and confirmed as "next friend" at this time, subject to the results of the mental status examination discussed below.

**(2)  Adequate Explanation of Celia's Disability**

In response to the motion to deny "next friend" status, Petitioners submitted an affidavit from a physician who stated that he had been Celia's doctor for the last twenty-five years.  He had been making weekly visits to her home since June 2013 when she became ill with a stomach ulcer which left her too weak to go to his office.  In December 2013 she suffered a hemorrhage and developed respiratory complications, resulting in a need for her to have oxygen support each day.  The physician further stated that Celia is prone to hypoxemia, especially in stressful situations, and is at risk for stroke.  She is bedridden and the doctor did not believe she should be moved from her home (Aff. of Dr. Ruben Hernandez Reynoso, Ex. A to Resp. to Mot. to Dism., D.E. 144-1).

In addition, the doctor described Celia as mentally disoriented and without the mental faculties to make personal, medical or other decisions.  Most recently, she had failed to recognize the doctor and was not responsive to his comments or questions.  Any responses she did make lacked pertinent facts and reasoning (*Id.*)

Isabel stated in her affidavit that she has been Celia's primary caretaker since June 2013.  Celia has two housekeepers and three home health care providers who work eight-hour shifts to provide around-the-clock care (Aff. of Celia Isabel Garcia Gonzalez, Ex. B. to Resp. to Mot. to Dism., D.E. 144-2).  Prior to June 2013, Isabel would drive Celia to run errands and for social outings, but since that time Celia has been immobile.  Celia recognizes Isabel but at times does not recognize other visitors.  She is not always verbally responsive, has a very short attention span and cannot engage in even a brief conversation (Isabel Aff., Ex. B. to Resp. to Mot. to Dism., D.E. 144-2).

The Government moves for an independent medical examination of Celia pursuant to Rule 35 of the Federal Rules of Civil Procedure. The Government asks that the examination take place at the Federal Courthouse in McAllen, Texas, which they assert is a fifteen-minute drive from Celia's house in Reynosa, Mexico.

Petitioners are generally agreeable to the examination, but object to the proposed location, asserting that Celia is bedridden and is at risk of stroke should she be moved. Petitioners ask that Celia be examined at her home. Given the affidavit from Dr. Reynoso in which he opines that Celia is at risk for stroke in stressful situations, it is recommended that any medical examination of Celia take place at her home.

Petitioners also argue that the proposed order requires the physician to perform various tests and procedures. However, the proposed order tracks the language of Fed. R. Civ. P. 35(b)(2), which requires that the examiner's report set out in detail the findings, diagnoses, conclusions and results of any tests. The proposed order does not require particular tests or examinations, but orders that the examiner's report include detailed findings of procedures and results (D.E. 152-1). It is recommended that the scope of the proposed mental examination follow the outline set forth in Rule 35(b).

Petitioners also ask to be allowed to evaluate the credentials and qualifications of the physician proposed by the Government to do the examination. The Government apparently intended to attach the curriculum vitae of the proposed physician to its motion for medical examination, but did not do so (D.E. 152). The Government should be ordered to provide the Court and Petitioners with a copy of the proposed physicians' curriculum vitae five days prior to the examination.

In sum, it is recommended that Isabel continue to act as "next friend" to Celia pending the outcome of the medical examination.  It is further recommended that the Government's motion for appointment of guardian ad litem for Celia be denied as Isabel appears dedicated to Celia's interests.  If, after the mental status examination, the Government wishes to reurge its motions to deny "next friend" status to Isabel because it believes she is able to represent herself in this action, it should be allowed to do so.

### D.  Conflict of Interest

The Government contends that Alvaro, Celia and Isabel have conflicting interests and that the attorney of record should not represent all three.  The Government further contends that the attorney has not met Celia and that it wishes to bring that fact to the attention of the Court.  The Government stops short of asking that the attorney be disqualified from representing Alvaro, Celia and Isabel, but asks that an attorney ad litem be appointed to represent Celia (D.E. 153 at 5).

The Government notes that the DEA agent stated that Alvaro told her that he used Celia's account for his own benefit and that he was able to make Celia sign a false, backdated contract during the time of her alleged incompetency in order to justify to the bank certain money transactions.  In addition, Isabel was a co-signer on Celia's account and has received direct financial benefit from the account.

First, Isabel is not a party and the attorney does not represent her.  Isabel appears only as "next friend" to Celia.  As discussed above, the Government has not shown that Isabel's interests in this action conflict with those of Celia.  Second, the statements attributed to Alvaro are hearsay, and, moreover, there is no evidence that the second false

contract purportedly signed by Celia was ever signed by any other party or is considered binding on any party.

In the Fifth Circuit, courts must be sensitive to preventing conflicts of interest.  *In re American Airlines*, 972 F.2d 605, 611 (5th Cir. 1992).  A district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it.  *Id.* (citing *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976)).

American Bar Association Model Rule 1.7 provides the following:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
> (2)  there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives consent, confirmed in writing.

ABA-AMRPC § 1.7 (2011).

The Government has failed to show that the attorney's representation of either Alvaro or Celia is directly adverse to the other, or that there is a significant risk that representation of either will be materially limited by responsibilities to the other. Based on the information presented thus far, Celia's interests are aligned with those of Alvaro, at least so far as their interests relate to the Government's criminal forfeiture case. At this point in the litigation, the attorney does not have a conflict. Should the Government discover evidence of a concurrent conflict as litigation progresses, it may bring it to the Court's attention at that time and re-urge its motion for appointment of an attorney ad litem for Celia. Accordingly, it is recommended that the Government's request for appointment of an attorney ad litem for Celia be denied without prejudice for refiling.

## CONCLUSION

Based on the foregoing, it is respectfully recommended that:

(1)   The Government's motion to dismiss (D.E. 122) be DENIED;

(2)   Petitioners' motion to set aside or amend the preliminary order of forfeiture (D.E. 145, 146) be DENIED;

(3)   The Government's motion to deny "next friend" status (D.E. 122) be DENIED without prejudice;

(4)   The Government's motion for examination of Celia (D.E. 152) be granted, so long as the medical examination takes place at Celia's home and Petitioners are provided a copy of the proposed examiner's curriculum vitae five days before the examination;

(5)   The Government's motion to appoint a guardian ad litem for Celia (D.E. 153) be denied; and

(6)     The Government's motion to appoint an attorney ad litem for Celia (D.E. 153) be

denied without prejudice.

Respectfully submitted this 5th day of September, 2014.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).